(No. 20899.—

ELISE GRAHAM, Defendant in Error, *vs.* THE CITY OF
CHICAGO, Plaintiff in Error.

*Opinion filed December 17, 1931.*

WILLIAM H. SEXTON, Corporation Counsel, and ALEXANDER M. SMIETANKA, City Attorney, (ROY S. GASKILL, and MATILDA FENBERG, of counsel,) for plaintiff in error.

WALTER J. MILLER, and WALTER L. WENGER, for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

The plaintiff, Elise Graham, recovered a judgment against the city of Chicago in the superior court of Cook county for $16,000 damages for personal injuries. The judgment was affirmed by the Appellate Court, and the cause is brought to this court by *certiorari*.

The gist of the action as laid in the declaration is that the city of Chicago negligently permitted water from an adjacent playground to flow over and upon a sidewalk of said city during the month of January, 1926, by reason whereof the surface of the sidewalk became covered with ice, slippery and unsafe for public travel; that defendant knew, or in the exercise of ordinary care would have known, of said unsafe condition, and that plaintiff, who was then passing along said sidewalk in the exercise of due care, slipped and fell upon the ice and was thereby injured.

Ryerson school is a public school situated between Huron street on the north and Ohio street on the south. It is bounded on the east by Lawndale avenue. There are sidewalks running along the street adjacent to the school

property on Ohio street and Lawndale avenue. The intersection of these streets is at the southeast corner of the school premises. An iron fence is maintained on the school yard within a foot or two of the property line. It had been a practice of the school authorities to flood the school yard in this corner in freezing weather in order to provide a skating place for pupils. As an aid to this project a small earth ridge or dike about a foot high was constructed on school land a short distance from the fence. This construction was for the purpose of making a basin for water intended to be frozen. On January 12, 1926, the skating area was flooded and overflow water was allowed to run across the walk. The weather was cold and the water froze, creating an icy, slippery condition, which lasted over a period of several weeks next ensuing. At about 11:00 o'clock on the evening of January 25, plaintiff, unaccompanied, was going south on Lawndale avenue on the walk next to the school house. It had been snowing and the walks were generally covered with a small layer of snow. This covering concealed the ice upon the sidewalk from the view of plaintiff. She stepped upon the snow-covered ice above mentioned, where she slipped, fell and received the injuries complained of.

Plaintiff appears to have been in the exercise of due care and caution for her own safety at and immediately before the time of the accident. She was proceeding along her way near the center of the sidewalk, and according to her uncontradicted testimony it had been "nice walking." She had not seen anything to apprise her of the existence of the ice, and the first time she discovered it was after she had fallen and looked around, wondering how the accident had happened. A pedestrian upon a sidewalk may ordinarily assume that it is in a reasonably safe condition for travel. To hold a person absolutely bound to keep his eyes fixed upon a sidewalk in search of defects and dangerous places would be to establish a manifestly unreason-

able and impracticable rule. *City of Chicago* v. *Babcock*, 143 Ill. 358.

It is claimed that the defendant city was not guilty of any negligence under the law in permitting the ice to remain on the sidewalk; that a city is under no obligation to remove ice from sidewalks in the winter time unless it had formed in ridges and hillocks, so as to be in the nature of an obstruction to pedestrians, and that it is immaterial whether the slipperiness was caused by natural or artificial means. What, if any, duty devolves upon a city to remove ice from its sidewalks is a subject of a great variety of opinions, and because of this divergence of views a number of different and contradictory statements of the law have been laid down in the various jurisdictions. However, there is one rule which is almost universal. That is, a city is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes. (13 R. C. L. "Highways," 408; *Spillane* v. *Fitchburg*, 177 Mass. 87; *Reedy* v. *St. Louis Brewing Ass'n*, 161 Mo. 523, 53 L. R. A. 805.) A municipality is bound only to use reasonable care to keep its sidewalks reasonably safe for the amount and kind of travel which may fairly be expected upon them. (*Boender* v. *City of Harvey*, 251 Ill. 228.) In view of the generality of ice and snow in the winter time, the doctrine has become quite prevalent that it would be an unreasonable requirement to compel a municipality to remove them from walks and streets. In *Chase* v. *Cleveland*, 44 Ohio St. 505, the court said: "It is not unreasonable to assume that there were hundreds of similar dangerous places in the city of Cleveland at the time of the accident to plaintiff. To effectually provide against danger from this source would require a large special force, involving enormous expense." While this rule has assumed approximate universality, it has nevertheless been made subject to various exceptions. For

example, it is sometimes said that it is immaterial whether the slipperiness was caused by natural or artificial means. (43 Corpus Juris, 1022; *Nason* v. *Boston,* 14 Allen, (Mass.) 508; *Henkes* v. *Minneapolis,* 42 Minn. 530.) In other jurisdictions the exemption exists only where it was caused by natural means. (13 R. C. L. "Highways," 413; *Evans* v. *Concordia,* 74 Kan. 70; *Reedy* v. *St. Louis Brewing Ass'n, supra; Huston* v. *Council Bluffs,* 101 Iowa, 33, 36 L. R. A. 211.) Likewise, it has been held that a city is not liable if the ice was merely smooth and slippery, (*Evans* v. *Concordia, supra; Anthony* v. *Glen Falls,* 88 N. Y. Sup. 536; *Cook* v. *Milwaukee,* 24 Wis. 270;) yet liability may attach if it were in ridges or hillocks. *Evans* v. *Concordia, supra; Luther* v. *City of Worcester,* 97 Mass. 268; *Jones* v. *City of Troy,* 127 N. Y. 671.

· The Appellate Courts of this State do not agree as to when a municipality is liable, and the Supreme Court cases cited by counsel are not in point. In *City of Quincy* v. *Barker,* 81 Ill. 300, plaintiff received injuries through slipping upon a ridge of ice in the center of a sidewalk. He recovered a judgment in the trial court, but the judgment was reversed, not on the ground that a city is never liable for damages occasioned by slippery ice upon sidewalks, but because it appeared the ice was in the center of the walk and there was ample space left on either side for plaintiff to have passed in the exercise of reasonable care. The court said: "It will be remembered that this accident did not occur in the night time, when the plaintiff could not see the condition of the walk, but in broad daylight."

The following language appears in *City of Chicago* v. *McGiven,* 78 Ill. 347: "The mere slipperiness of a sidewalk occasioned by ice or snow, not being accumulated so as to constitute an obstruction, is not such a defect as will make the city liable for damage occasioned thereby." The supporting cases cited are from other jurisdictions and simply announce the general rule above stated. It may be said

that the language thus employed was not at all necessary to a decision of the case, inasmuch as the declaration was not predicated upon any averments relative to ice. The charge was that plaintiff's injuries were due to the city's negligence in permitting a part of the walk to be made of a heavy piece of plate glass inserted in the walk for the purpose of affording light to a basement, upon which glass plaintiff slipped and fell.

The decisions in the various jurisdictions upon this question of liability are so varied and numerous that it would be impracticable for us to attempt to analyze them or to harmonize them, but we have reached the conclusion that the reason which underlies the rule exempting cities from liability because of damages from slippery ice is that of necessity. It is grounded on the fact that it is unreasonable to compel a city to expend the money and perform the labor necessary to keep its walks reasonably free from ice and snow during winter months. Especially is it true in this latitude. But the rule must be predicated on the formation of ice from natural causes, for it would be neither unreasonable, impracticable nor expensive, as a general proposition, to compel the removal of ice from sidewalks which was produced by artificial causes. It is the generality of a situation resulting from natural causes that gives rise to the rule. Without that generality there would be no reason for the rule. There is no more cause for excusing a city from liability where damages have accrued from ice which has formed on a walk in an unnatural way, than there is to excuse it from damages when a walk has been permitted to become defective from any other cause. The evidence shows the particular ice had remained on the sidewalk at least thirteen days prior to the accident. Such a lapse of time, under the facts in this case, was sufficient to charge the city with knowledge of the dangerous condition. The city's liability did not arise from the mere flooding of the sidewalk, but from its neglect to remove the ice

which had formed there in an artificial way and its omission to make the place reasonably safe after notice of the dangerous condition.

Many cases have been cited which deal with ice formed on sidewalks by the freezing of water from down-spouts. In those cases it was not claimed that liability arose from diverting the flow of rainfall, but the charge of liability was made against the municipalities because ice had formed in an artificial and unnatural way and the city had neglected to make the condition reasonably safe. The ice where plaintiff fell covered only a strip of about two feet entirely across the width of the walk. It would have been no unreasonable undertaking, either in expense or labor, to have removed the ice, and under the existing circumstances the city should have used reasonable care to eliminate the danger.

It is contended that the plaintiff ought not recover because there was no proof that she was ever attended by "Dr. Edwin Brucker, 4100 West Madison street, Chicago, Illinois," or that his name and address were correctly stated in the statutory notice of claim. The statute requires the plaintiff in a case of this character to serve a notice of his claim upon a municipality as a condition precedent to a right to bring an action. The statute is mandatory. Such a notice was served. The plaintiff averred it in her declaration and proved it upon the trial. The statute does not require a plaintiff to furnish proof of each and every matter set out in the notice. It merely requires him to make proof of the service of the notice. It is apparent that if the notice specified a date of the accident and a different date therefor was shown by the evidence the notice would not be in compliance with the requirements of the statute and a suit to dismiss on that ground would be allowed, but if there is nothing in the proof to contradict the recitals of the notice, or if there is nothing to show that a recital is untrue, there is no ground for a motion to dismiss. The statute provides that the notice must be given

and the rules of practice require that proof of service of the notice shall be made upon the trial. In this case a copy of the notice was introduced in evidence and proof was made of its service. Nothing appeared in the evidence to contradict any recital. No effort was made to show that Dr. Brucker was the attending physician or that his address was correctly stated in the notice. There is no proof at all in the record concerning these matters, and we see no good reason why the plaintiff should be required to make affirmative proof of the truth of recitals of this character unless they are challenged and put in issue. However, the notice which was offered in evidence stated upon its face that Dr. Brucker was the attending physician and gave his address. No objection was raised by the defendant because of the lack of positive proof and the court's attention was never called to it.

Counsel for the city claim that proof of these matters was made necessary by a plea of the general issue, and cite *Condon* v. *City of Chicago,* 249 Ill. 596. The cited case does not hold that a plea of the general issue requires proof of all matters set up in the notice. It simply holds that the giving of a notice is an essential part of the right of action and that a plea of the general issue necessitates proof that the notice was given. The giving of the notice, and not its contents, is what a general traverse puts in issue.

There was no mention made of the objection now raised, either in the motion for a directed verdict, in the motion for a new trial, in the motion in arrest of judgment or in the assignments of error. It is too late for that objection to be made at this time. *Pickett* v. *Kuchan,* 323 Ill. 138; *Highway Comrs.* v. *City of Bloomington,* 253 id. 164; *Tucker* v. *Duncan,* 224 id. 453; *Chicago, Burlington and Quincy Railroad Co.* v. *Dickson,* 143 id. 368.

Finding no reversible error in the case the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*